Yes, sir. Good afternoon, Your Honors. May it please the Court. My name is Stephen Simone. I'm co-counsel for plaintiffs Dr. William Bauer, Carlos Sanchez, and the proposed class. Your Honors, I believe this is a very simple case with clear precedent of both California Supreme Court authority and California statute going back in some form or other to 1872. And that statute, Your Honor— Maybe if the California Supreme Court were clearer, you would be right. I'm sorry? I'm talking about two lines of authority. Oh, actually, Your Honor, it's such a basic concept in consumer contracts that a consumer gets their money back unless their breach has caused damage, that there are few cases on this issue. Very rarely would a business say, well, you're not going to get your deposit back even though we immediately sold that unique product to a replacement purchaser for a higher price. Businesses generally don't do that. Hotels do it all the time. Hotels do, Your Honor, because that's a situation where the replacement purchaser is in fact cannibalizing another sale. They may have made that same week, that afternoon, that month. No, but if they do make it, they still charge you and they rent the room. Sure, because in accordance with the statute, Your Honors, it would be impractical or extremely difficult to fix what the actual damage is. Because what would the damage be if they had sold that to somebody else? Well, it would have cannibalized another sale, so it's unclear which portion of their profit they lost. Well, that depends whether they're full or not. Yes, Your Honor. I mean, and your case also depends on whether they're full or not. Absolutely. In the unique circumstances of this case, Your Honor, I would make an analogy to the Millennium Hotel, Nevada, 2000, New Year's Eve. If you had a reservation for the hotel, December 31, 1999, and that was full and you had to cancel, I submit that was not fungible. People wanted to be there for New Year's, Your Honors. If they were sold out and you had to cancel, I submit in that situation, depending on what Nevada's statute says, the hotel could not keep your money. Because in that situation, as long as they immediately resold to another purchaser, likely for a higher price, they made money on that spot. And that's a sale they otherwise would not have made. Well, this is sort of leaping over several other issues, but that has to do with what the impractical – assuming that this was liquidated damages, what impractical or extremely difficult to fix the actual damage means. And the question whether it means that you look at it at the time that the breach occurs or you look at it forward. And whether it would be – if you had to chop the – I mean, you could estimate the damages if you chopped the circumstances into enough subcategories, which is true in your instance as well. In other words, in the instance in which the – the cruise is sold out and they have waiting people and the waiting people take the place, then it's easy to figure out the damages. There are very minor damages. But the question is if you try to project forward, does that make a difference? Your Honor, it does. I know when you read the travel company's brief, it may not be clear, but the statute I'm referring to, it's Section 16. I know that. It's D and D doesn't say at the time the contract was made. Exactly. And I want to know exactly what your position is. Exactly, Your Honor. So as the California Supreme Court said in the 1951 case of Friedman v. Rector, you take a look at the evidence not just at the time of breach, but after what happened subsequent thereto. Now, I'm not going that far, Your Honor. All I'm saying is this. I'm saying in accordance with California Supreme Court law and the change the legislature made in 1977, let's take a look immediately at the time of breach. If they resold that to somebody for a higher price and there was no comparable alternative available, then there were no damages except maybe a $5 charge for a reservation fee, which, of course, would be offset by the higher price they charged the closer you get. What I'm not saying, Your Honor, is this. In a real estate context, you could have people say, well, gee, court, would you please impose a constructive trust on my spot? I canceled and they went ahead and they resold that item to somebody else for a higher price. In a landlord-tenant situation, some courts impose a constructive trust. Okay. So then your problem is is there a breach here or does that matter? Absolutely, Your Honor. Absolutely. Why? It does matter or it doesn't matter? It does matter because I agree with the district court that bouncing a check at one's bank does not constitute a breach. It's something that we may do. We pay a fee for that, but it doesn't mean it's a liquidated damages clause because the contractual relationship continues. The bank continues to hold your money. They continue to let you make deposits and withdrawals, and the account holder keeps the account open. But last check. I don't understand where you get the idea that the contractual relationship necessarily continues. Because, Your Honor, if you bounce a check, you have an agreement that says I will pay you a $6 charge for bouncing it. However, the bank doesn't say we will no longer cover your checks. We are going to close your account. There's no termination there. Whereas in this case, Your Honors, what happened is the cruise company said, okay, you're not going on the trip. That's it. They sold it to somebody else immediately. My clients could not change their mind the next day, the next week, and the next month. That was gone. There was no contractual relationship. Why does that define whether there's a breach or not? I mean, you mean if the bank had written its contract differently and had said, essentially, suppose they had said you must have enough money in your account to cover your checks. If you don't, you're in breach, and we're going to charge you X amount of money. But we're not going to cancel your, you know, you can continue to deal with us. Sure, Your Honor. I think as the California Supreme Court said in Garrett v. Coast and Southern, what matters is this, the substance of what's going on. And in that situation, the substance is a contractual relationship continues. It's not the termination of a contract. If I say I'm going to paint your house if you give me $1,000, if I say I'm not going to do it, there's a breach. It's over with. Suppose they had no refund policy. They just said you pay, you have to pay by three months ahead of time, and that's it. I mean, you either show up or you don't show up. The room is yours. And if you don't show up, you don't show up. Well, Your Honor, there's a contractual issue of mitigation of damages. They notify them three months ahead of time, and they say, here, please, go ahead and sell it, which they immediately redid. But they're not breaching. They said, look, you have the room, you know, fine. You don't want to use it? Don't use it. Right, but they said I'm not going on that. I'm not going to pay you the rest of the money. No, no, no, I'm assuming that they paid up. Okay. Okay, paid up. Yes, they are. In fact, they did prepay, Your Honor, 100%. And in that situation, it's akin to a deposit. They're saying, I didn't go, somebody else purchased that item for you at a higher price. Now I just want the money back. That, to you, company, constitutes nothing but an unconscionable windfall. But the unconscionable part, I mean, you're not arguing the unconscionability issue anymore as such, right? Not in the, no, the unconscionability to the extent that this is unjust enrichment. They're making, they were glad my clients canceled. They made money by immediately reselling it to somebody for hundreds of dollars more. And then they kept, on top of that, 40% of my client's money. That cannot be justified, Your Honors, under Section 1671D or the California Supreme Court Authority interpreting it since then. So airlines would face the same issue, correct? Your Honors, I would say only in very unique circumstances that exist here. If you have a situation, say, a special cruise offered three Harvard PhDs and UCLA PhDs, taking you to Southern Africa, Sub-Saharan, to do research, and there's only 15 seats, and it's only offered that one time. If they sold out three months ahead of time, and I canceled, and they immediately resold it to somebody else, made a sale they otherwise would not have made, then yes, I believe 1671D requires the consumer to get his or her money back. I believe it's that simple, Your Honors. I know the other side tries to create this ominous situation whereby airlines and hotels would be in disarray. It's absolutely not the case, Your Honor. As Judge Davis was saying, yes, I respond to his question, on New Year's Eve and the Millennium, yeah, in a situation like that, if I cancel at the last minute, and you immediately resell this. But how do you get to your position legally? The only way you could get there, as I understand it, was by saying, essentially, it's always a liquidated damages situation. But it is ascertained, the prohibition applies only in certain circumstances, i.e., when from the nature of the case, meaning the particular situation, it's impractical or extremely difficult to fix the actual damages, but in your situation, it's not impractical. So therefore, in other words, don't you have to buy into the notion that it's always a liquidated damages provision, but it is enforceable sometimes and not others? It may be a liquidated damages clause, or it may just be a different type of payment, like a bounced taxi. Yeah, but that's what I'm trying to understand. That's what we're trying to ask you. Uh-huh. How would you figure out which was a different – the examples you're giving about the Millennium versus the other hotels versus the airlines is not any difference about the contract. It's a difference about how it played out in a particular circumstance. So it seems to me that it has to be either always a liquidated damages clause, but sometimes a valid one and sometimes an invalid one, or never a liquidated damages clause. Well, Your Honor, as they said in Garrett v. Coast and Southern, you have to take a look at the substance of what's going on. And in some cases, such as this one, it's clear when you're paying 40 percent because you're not performing in the contract, that is not some kind of alternative performance you want. But why are you not performing? That's what I'm not understanding. You're saying, look, I'm – I've already paid and I'm not coming, but I didn't contract to come. Did he contract to come? In a sense, yes, Your Honor. He had the right to come. And if he chose not to – Had the right to come, but did he – was his consideration coming? I guess they preferred that he not come, Your Honor, but in the situation where he gave them advance notice, he has the right for the damages to be mitigated from the other side. All right. But is he – I guess what I'm trying to understand is it was his performance coming or was his performance paying? Or was it paying and coming? Yeah, the idea was that unless he had that right to be there, no reasonable consumer or at least sophisticated consumer would want to pay $7,000 unless they had every intent of coming, and that was part of the agreement, that they indeed would be coming on that boat and there better be enough fuel to have 2,000 people on that lower level. So, yes, Your Honor, the understanding was they were, in fact, going to come. So by breaching and saying, I want my money back, that, in fact, removed their performance and said, hey, you now have a duty to mitigate your damages, and more specifically under 1671D, you have to give me back all the money if you, in fact, did not suffer damages at the time of breach. Do you want to talk at all about the fees? Sure, Your Honor. As you know, I submitted a Rule 20HA letter last week, a decision the Ninth Circuit ordered, handed down, a memorandum decision in January. I have hard copies here for the Court and my opponent, if you'd like them for reference. It was a case, Genesis Merchant Partners v. Neary's, in which essentially the same thing happened here. The Ninth Circuit said, we're going to return this to the District Court. The District Court's decision does not comport with this 1951 California Supreme Court decision of Friedman v. The Rector. And because we do that, we by necessity reverse the attorney's fee judgment. And, Your Honors, I submit that's an important consideration in this case, because here in the reply brief, the travel company said, well, even if it looks like you may get your money back, we still prevailed on parallel theories of recovery, like conversion, so we should keep most of the money. All right, that's fine. But what about the notion that if we were to affirm on the basic issue? If you were to affirm, Your Honor, I think it would be, and according to Anderson v. Malwani, the Ninth Circuit authority, they should get the attorney's fees back. And this situation would be unjust and unconscionable, where the corporate defendant simply withheld money when there were no out-of-pocket damages and yet refused to give back the money, forced the plaintiffs to file a lawsuit, and then engaged in various – Is that a federal – I'm sorry. Is that a federal question or a state – It is, Your Honor. It's federal courts that have the authority to do that. Well, even in a diversity case where the claim to attorney's fees is statutory? Yes, Your Honor, they do. The federal courts have that authority, and they do it in situations where you have state court rules at issue, where you have state statutes, where you have federal statutes. What we don't have is a case on record where the district court had a California contractual provision. I submit there's no difference. It's the proverbial distinction without a difference. They have had a Washington state contractual. So we're not sitting as the California court of appeal on this question? No, Your Honor, you are not, but you have the right as a federal judiciary to say – As a general matter, when we determine attorney's fees – I'm sorry, Your Honor? As a general matter, if we have a 1021.5 case or some other California attorney's fees issue, we follow California law. If it's mandatory under California law, then it's mandatory under federal law. Yes, but we have the recent decision, Your Honor, several central district decisions also in which they said in this situation, even though the consumer lost and was totally wrong, they're not going to pay attorney's fees in this situation. I know, but what Judge Davis is asking you is where do you get the notion that that's a federal question? It's Anderson v. Milwaukee, Your Honors. It's a Ninth Circuit case, and other circuits have followed that reasoning as well. They refer to Williston on contracts, and they do it in situations even where state statutes aren't issued, state contractual law. Anderson I'm looking at is a California court of appeals case. Is that a different Anderson? I'm sorry, Your Honor, did I misspeak? The case I'm talking about, Anderson v. Milwaukee, Ninth Circuit in 1999. It's on page 11 of the opening brief in the 55737 case, Your Honors. That was a contractual case? Yes, Your Honors, a contractual case. Not a statutory case? Some of these were statutory. I'm talking about Anderson. Anderson, I believe, was statutory. Okay. I think it was contractual. Okay, well, your time is up. We'll give you a minute in rebuttal. Thank you, Ray. Thank you, Your Honors. Good afternoon, Your Honors. James Nguyen from Davis Ranch, Maine, on behalf of the appellees. This court can affirm the district court's rulings below for three clear reasons. First, there was no breach of contract at issue here. And second, even if there was, we would meet the liquidated damages standard under Section 1671D. And finally, I believe the attorney's fees award was very reasonable. On the first issue, Your Honor, the question becomes when a consumer books some type of travel booking, a hotel, an airline, a cruise ship ride, a tour operator, even going to a restaurant, which sometimes will make you take a place of nonrefundable deposit, is that obligating the consumer to actually go on the trip or go to the reservation? And the clear answer is no. What the reservation does is provide the consumer certainly the right to do so. But in this case, the guest agreement made very clear that the consumer has a right to cancel the reservation at any time, and depending on when the reservation is canceled, that has a financial consequence. Well, let me ask you something. Suppose here they prepaid, right? Yes. Suppose they hadn't prepaid. Okay. And when the date came due, they didn't pay. Okay. All right? So they did breach the contract. Does that make a difference? They would be breaching the requirement to pay, but then my feeling in that situation is that the contract probably would have been conditioned on their payment in the first place. And as you know, with cruises, typically they require some type of deposit to even secure the reservation, as well as payment for the remainder. What? I mean, that doesn't tell me anything. A distinction, Your Honor, is the cases that were cited. I'm assuming that they have not yet been obligated to pay the full amount that they would be entitled to refund. Okay? Maybe they don't set the contracts up that way. But so that they, in fact, they had an obligation to pay a certain amount of money in a certain day, and they didn't do it. Now, can the cruise company go and get the extra money from them? In that situation, Your Honor, I would say no. And that is where some of the cases that have been cited in the briefing go to a different analysis, which is some of the cases which ---- So it all depends on whether it's prepayment or not? No, Your Honor. I think it depends on certainly what the contract says. And in the situation ---- It is a very amorphous line, it seems to me, between your purchasing the right to an alternative performance or your breaching. He's saying they breached by not showing up. You're saying, no, they didn't breach by not showing up. That's correct, Your Honor. Because when the consumer booked, prepaid the entire cruise, their obligation is over. They paid, and therefore they have a right ---- So you actually think that, therefore, if they hadn't prepaid the entire cruise and they notified somebody that they weren't going to pay anymore and they weren't coming, then they will have breached and then it is a liquidated damage provision, even though it's exactly the same provision? No, Your Honor. In a situation which the court is hypothesizing here, which is if you make a partial payment, let's say a deposit, and you have an agreement which says you have to pay the remainder of the cruise fee over a period of time, and then you don't make the payment, at that point I would say that the consumer has breached the obligation to pay, but their right to be on the cruise would not exist because they haven't completed the payment obligation. In that scenario, I would say that the travel company would have a right to retain, depending on what the agreement said, some amount of money or all the amount of money that has been paid to date, but not necessarily to go after the consumer for the balance of the cruise fee that has not been paid to date. A lot of this would certainly depend on what's ---- But that is so completely counterintuitive because you then end up where the cruise company is worse off. Uh-huh. And what you're saying is that they protected themselves here by requiring all the money in advance. Correct, Your Honor. And that is why airlines do the same thing. It's not a situation where you can book it. Well, airlines usually do not take your money if you don't show up. Ordinarily, they don't. They're starting to do it, I think. Many do. But traditionally, they have not, precisely because they expect to resell. I don't know why, but they haven't. Your Honor, actually, I would disagree with that because many airlines now give you an option of paying for a refundable fee or a nonrefundable fee. Even when it's refundable, all that means is that you get to buy a different ticket for a different place. You can get a credit towards a future flight, Your Honor. But that doesn't mean that they keep your money and don't give you anything else. This fee, as I understand it, did not allow you to transfer either to different crews. That's correct, Your Honor. But that's something that was communicated to the consumer upon the time of booking. It's something that airlines do all the time, hotels do all the time, which is to say if you book the hotel within, let's say, a certain window, certain rooms may be nonrefundable. Or if you cancel, you'll only get one of your room nights back, but not the entire price. And in this situation, the reason travel companies do that is, as the Court pointed out, to offset and mitigate the risk, to protect themselves. And in the scenario where the consumer is booking the travel reservation, there's no breach by the consumer when they don't show up. That is why airlines never let you pay a partial payment. I've never heard of an airline that says, Wait a minute, there's no breach and you don't show up. Then why, for example, can hotels go and re-rent your room? Certainly, Your Honor, they can. And that's because when- Why don't I just get to have an empty room? Your Honor, you know, that certainly may not seem particularly fair at initial glance from a consumer's perspective. It doesn't comport with your notion that I didn't breach. I must have done something to not have my room anymore. Well, Your Honor, if you book a hotel room and decide you're going to cancel it, you didn't breach anything because you have a right when you book a hotel room to say, I don't want to go there anymore. There's been no contractual breach prior to the consumer. The only question becomes, what is the financial consequence to you as a consumer, if any, for canceling the hotel room? For some hotels, depending on what the arrangement is, there's no financial consequence to you. You can breach and you get your money back if you've made a deposit. For other hotels, they tell you in advance. If you book for this particular date because it's a special date or if you book within a certain window of time, if you cancel, then you're not going to get your money back. And that's something that's communicated to consumers. And in that scenario, if you cancel your reservation, I don't see where there's a breach of the contract by the consumer or by the hotel. And that's what happened in this situation. There was neither a breach by the consumer. The plaintiffs had every right not to go on the cruise. They secured their reservation. Once they chose to give it up, that wasn't a breach, and therefore the travel company had every right to retain the cancellation charge that was communicated to the consumers very clearly in the contract. And there's no argument, certainly at the appellate level, now that— Why would California define a liquidated damages provision in such a way that if you breach, you get certain rights under the provision, but if you don't breach and you, quote, buy a different performance instead, then you're worse off? Why would that be? Your Honor, because I think that the civil code section that the plaintiffs are invoking just doesn't apply here at all because it assumes there's a breach. I don't think it even applies to the scenario, and that's our primary argument. That's what the district court found, that when you make a travel reservation— think about the Purdue case from the California Supreme Court, and that involved the insufficient check funds issue, right? There's a $6 fee that is imposed upon the consumer if you write a check with insufficient funds. The court found that when you as a consumer enter into your agreement with your bank, you're never promising, I'm never going to write an insufficient funds check. You just agree in advance to what the consequence of that is, and in that case— And then I gave him the hypothetical. What if you did write it so that you did promise that? I promise I'm never going to write a check that doesn't have insufficient funds. If you do, it's $6. That changes everything? Your Honor, if the agreement said that, then I think it would change the analysis. I don't think it would happen much from a practical perspective, but yes, I think that would change the analysis. Why wouldn't it happen? Your Honor, I think that the—I think it would change the analysis in that situation. You would look to see whether or not the liquidated damages met the provisions of 1671. I keep waiting for you to say something about the economics going on here. Presumably, these cruises cost less than they would otherwise. Do you not make that argument? No, Your Honor, because we point out that there's just no breach of contract in terms of the cruises— by contracting to cover unknowable loss, presumably the average person pays less for a cruise because most people are going to show up. I understand, Your Honor. I think there's a value and a benefit. Maybe my point doesn't make any sense.  There is a value to the consumer in enforcing such policies. There's a value to both sides. Correct, Your Honor, because it offsets the risk to the travel company, therefore it allows them to offer their cruise offering to consumers for a price that brings down the price for everyone. It's sort of, you know, if you want to get into economic analysis, it's sort of saying that in this situation, the travel company is not the cruise line. They contract and they charter with the cruise line and agree to a minimum contractual payment. When they're doing that, they're taking on a big risk, a multimillion-dollar risk for booking out an entire cruise ship. Therefore, to mitigate against the risk, they say, look, if you book and make a reservation, we can charge you. Here are the amounts for all the different cabins. If they had to take on the risk that people canceled and they couldn't get any of their money back, that would ultimately lead to higher costs of business and therefore overall higher costs for everyone. And this is one of the reasons why defining in advance for both the consumer and the travel company what the cancellation charge would be benefits both sides. Otherwise, Your Honors, if you look to a situation where you were to look in the future, at the time a passenger were to cancel, that would mean all kinds of variables would come into play. Let's say plaintiffs canceled and two other customers with the same cabin canceled, but only two were rebooked out of three. In that scenario, which consumer would get the benefit of the booking? But, of course, that, I mean, what I was positing before is that these might be all liquidated damages provisions, but they would be valid ones in your scenario. So I don't see, that's not a helpful example. Your Honor, let me address that point, which is let's assume this is a liquidated damage provision. Section 1671D, though it doesn't use the phrase, as in 1671B, at the time the contract was made. Well, it clearly doesn't mean that. It says something, it has the word case in it. But it says, Your Honor, that except that the parties to such a contract may agree therein upon an amount, which shall be presumed to be the amount of damages. So it contemplates the parties agree in the contract. Read the rest of it. I'm sorry, Your Honor? Read the rest of it. It shall be presumed to be the amount of damages when, from the nature of the case, the case. Correct. It would be impractical or extremely difficult to fix the actual damage, which I understand to mean that the difference between this provision and the earlier one is that you look at the time of the case, at the time of the dispute, to see whether you can fix the damages or not. And in your example, you couldn't, so you could get the liquidated damages. And in this circumstance, you could, so you couldn't get the liquidated damages. Your Honor, I think that I would read that provision differently, because it still says that the agreement must be therein, meaning therein in the contract. Agree therein on an amount which shall be presumed when, from the nature of the case, it would be impractical. What do you do with the nature of the case, then? Yeah, what does that mean? Your Honor, I would say it's a less artfully drafted subdivision, you know. But all the courts that have evaluated, take a look at Hitts v. First Interstate, which is a California appellate court case, which we cite, which invokes Civil Code Section 1671D. And in that scenario, it dealt with late charges on a credit card, right? And those late charges, as well as overlimit fees, were placed in the original contract between the consumer and the credit card company. Based upon that, the court observed that the amount of liquidated damages must represent the result of a reasonable endeavor by the parties to estimate the compensation. But that estimation occurred at the time of contracting, and that clearly invokes. When, from the nature of the case, it was impractical or extremely difficult to fix actual damages. Your Honor, if the court were to reach that reading, I would submit that it would sort of turn the concept of liquidated damages on its head. Liquidated damages are set. No, but California bans liquidated damage except in narrow circumstances. Correct. But the concept of liquidated damages, as the case law indicates, presumes that it is set in advance at the time of contracting. If we evaluate later in time, when there's been a supposed breach, what the fair compensation is. No, that's not what I'm saying. Okay. What you're going to evaluate later in time is whether it's impractical or extremely difficult to fix the actual damage. That's what you're going to evaluate. Your Honor, I would submit that the analysis about whether it was impracticable or extremely to fix the actual damage at the time of the contracting, as opposed to at the time of a dispute later on. And that's what the Hitts v. First Interstate Bank-California Appellate Court did in evaluating this very subdivision, 1671D. In fact, it said that the focus is not on whether the liquidated damages are disproportionate to the loss from the breach, but on whether they were intended to exceed the loss substantially. And I would submit intended would mean intended at the time of contracting because you are going back in time to say, hey, at the time you could. I think there's no problem with the language from the nature of the case. That seems to talk about a case. Your Honor, I think the nature of the case does not necessarily involve nature of a lawsuit. It may mean the nature of the case of the contract that's being formed between the parties. I would agree that it's somewhat ambiguous what the nature of the case means, but I don't necessarily read it to mean the nature of a litigation that ensues. It could just as easily mean the nature of the case of the contracting in the first place. And, Your Honor, the final point I would make in my remaining time is that if we evaluate the provision here, which is a very common cancellation policy in many hotels and airlines where they may book out, they may fill up, someone cancels, and they keep their money, and the airline might make some extra money, it would turn the entire travel industry on its head. And you can't always assume that just because someone cancels and because the flight or the cruise ends up being full, that the airline or the travel operator ends up making double profit. There's all kinds of reasons why the cruise might have filled up. They could have given away cruise cabins at a lower price in order to fill up the cabin. They give away free cabin suites all the time. And requiring that analysis to happen later would mean that when I'm a consumer and I cancel, I won't know whether or not I'm going to get my money back, or even all of it or a portion of it. And that creates an untenable situation for both travel companies and tour operators. And for that reason, Your Honor, I would ask the Court to affirm the district court. Thank you, Your Honors. Consumers actually would love to know that if the cruise ship had no damages, they would get all their money back. They would like to know there's a ceiling. They would lose up to 40 percent of their deposit. But contrary to what the travel company said, consumers would love to know, hey, if I cancel, I'll at least get all my money. But that would be a funny deal, wouldn't it? I don't know, Your Honor. It would be a one-way ratchet. I'm sorry? It would be a one-way ratchet. Not necessarily, Your Honor. The company protects themselves if, in fact, they have damages by saying you will have to pay us up to a certain amount. And in some cases, Your Honor, if you cancel less than 30 days, they get 100 percent of your money, and that's pure profit for them. So I disagree, Your Honor. This was canceled 90 days. Anybody who's sensible at that point just doesn't bother canceling, just doesn't show up. You would want to notify them. Perhaps they could mitigate, they have a duty to mitigate damages. And in a situation like this where it's so— No, but if this provision were applicable, you just— I mean, in a way, they'd be worse off because people would just let it play out. I'm not feeling, well, should I cancel or not? No, why should I cancel? I'm going to have to pay 100 percent anyway. I'll just either show up or not show up. And that's why the courts and the statute do not like liquidated damage clauses. They force people to perform, and they go against the theory. Now, Mr. Wynn was saying a situation whereby you don't look at the time of the breach, but that's precisely what the California Supreme Court does in Friedman v. Rector. They cite Cal Civ Code 1671, and they say, when, as in this case, the evidence establishes that it would not be impractical or extremely difficult to fix the actual damages, such a provision may not be enforced. Mr. Wynn is referring to Hicks v. First Interstate. What they say there is the amount of the liquidated damages provision must be set at the time of contracting. And they did set 40 percent ahead of time. That's fine. But in Hicks v. First Interstate, they didn't have the situation we have here, Your Honors, where the company had no damages. I'm sorry. Here, there were no damages, but in First Interstate, there were late payments going in, and those were hard to determine at the time of breach. Completely different circumstance. And I distinguish that case in a footnote. Right, but you only get there if 1671 applies to begin with. If I could just say, Your Honor, the thing about the form over substance applying, the California Supreme Court says, if we let form dominate over substance, this exception could be swallowed up in the protection of 16— Well, can you tell us in one or two or three sentences, what is the line in California between those circumstances which are regarded as alternative performances and those which are regarded as liquidated damages? Absolutely, Your Honor. And this is the situation. It's form over substance. And this is what you look at. If you want to contract for an option, it's usually called that. If you want the option to buy 100 shares of IBM, you're going to put down— But the withdrawal from sale cases, they seem to be totally contradictory. The what? The withdrawal from sale cases. Withdrawal— My understanding is there were two different withdrawal from sale cases. One of them regarded it as a termination, and one of them didn't. Because, Your Honor, no one's going to say, I'm going to pay 40% for the option to go on this cruise. Nobody says that. But a reasonable consumer would say, I will pay $40 for the right to buy IBM shares at 22 by next December. They would do that. In this situation, the substance of what's going on, a consumer's never going to say, I'm going to pay 60% for the option to go on this cruise. They know that, in essence, what they're contracting for is the right to be on that cruise during that time. And that's not what happened here, Your Honor. That's not the situation where you have an option contract where they truly opt to do something else. All right. Thank you very much. Thank you, Your Honors. Thank you both for your arguments. An interesting case. Bauer v. Atlantis Advents, Inc. is submitted. And we are in recess. Thank you.
judges: Berzon, Owens, Davis